UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL SCHUSTER,

       Plaintiff,

    v.

OWNERS INSURANCE COMPANY and
DIANE WILSON,

       Defendants.

Case No. 21-cv-338-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Owners Insurance Company's ("Owners") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (Doc. 58). Plaintiff Michael Schuster has responded to the motion (Doc. 61).

**I.    Background**

This case stems from an October 4, 2019, auto accident involving Schuster and Devin Dahmer, an underinsured motorist. Schuster and his passenger Michael Cook were injured in the accident. Schuster made a claim for underinsured motorist coverage ("UIM") under his automobile insurance policy issued by Owners ("Policy"). Owners did not immediately pay the claim and refused to arbitrate it, although it eventually paid Schuster the policy limits.

In Count I of this lawsuit, Schuster seeks attorney's fees and a statutory award because he believes Owners vexatiously and unreasonably delayed settling his claim. *See* 215 ILCS § 5/155.[1]

---

[1] The Seventh Circuit Court of Appeals has recognized that there is no independent cause of action under § 5/155, which simply provides an additional remedy in a cause of action for breach of contract. *Creation Supply, Inc. v. Selective Ins. Co. of the SE.*, 995 F.3d 576, 579 (7th Cir. 2021) (noting "Section 155 does not create a cause of action"); *Hennessy Indus. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 770 F.3d 676, 679-80 (7th Cir. 2014) (stating § 5/155 "provides a remedy in a specified type of 'action' (case); it does not create a cause of action; it presupposes rather than authorizes a suit."); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902 (Ill. 1996); *see Kroutil v.*

In Count II, he brings a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/10a, for false, misleading, or deceptive statements made by Owners by its agent Diane Wilson on February 12, 2021.

In his response to Owners' summary judgment motion, Schuster concedes his ICFA claim, so the Court addresses only Count I, the insurance settlement claim. Because there is no genuine issue of material fact regarding whether Owners vexatiously or unreasonably delayed settling with Schuster, the Court will grant summary judgment on that count.

## II.     Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Nevertheless, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712

---

*State Farm Mut. Auto. Ins. Co.*, 195 N.E.3d 376, 382 (Ill. App. Ct. 2021) (noting a claim under § 5/155 is dependent on the success of a breach of contract claim). Owners has not made this argument, though, so the Court proceeds as if such an independent cause of action exists. Even if it does not, the Court retains subject matter jurisdiction over this case because of the claim pled in Count II.

F.3d 1166, 1168 (7th Cir. 2013).  Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways.  It may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B).  *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.  Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion.  *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168.  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

**III.  Facts**

A.   The Accident

The accident that gave rise to this case happened on October 4, 2019, near a traffic roundabout in Highland, Illinois.  Schuster was driving a van that he and his company, Highland Auto Glass, Inc., jointly owned; Cook was his passenger.  Dahmer pulled his van into the roundabout in front of the Highland van, nearly missing the van.  Down the road, Dahmer pulled

3

over, and Schuster pulled the Highland van to the side of the road several car lengths in front of Dahmer's van.  Schuster got out, and then Dahmer drove his van into the Highland van, injuring Schuster and Cook.

     B.    <u>Insurance</u>

        1.    <u>Schuster's Claim</u>

Dahmer's insurer, State Farm Insurance Company ("State Farm"), tendered its policy limits to Schuster and Cook ($100,000 to each).  This was insufficient to cover Schuster's injuries, so he made a UIM claim under the Policy.[2]  The Policy provided coverage in the amount of $300,000 per person and per occurrence.

Defendant Diane Wilson, a claims adjuster for Owners, was assigned to Schuster's claim. She received a written request dated July 15, 2020, from Schuster's attorney to settle with State Farm for its policy limits.  Wilson responded in a letter dated August 20, 2020, saying that Owners authorized Schuster to accept the policy limits from State Farm.  Schuster subsequently settled with Dahmer and State Farm and released Dahmer from additional liability.

In a letter dated January 28, 2021, Schuster asked Owners to arbitrate his UIM claim.  On behalf of Owners, Wilson responded in a letter dated February 12, 2021:

> At this time we do not agree to arbitrate this matter.  I do not believe you have requested authorization of the acceptance of the tort's tender of limits.  Please forward that request once they have offered to tender their limits.  Then please send a formal demand and upon receipt, I will then be able to further evaluate the claim.

Def.'s Mot. Summ. J. Ex. C (Doc. 58-3 at 1).  The letter was, of course, wrong to suggest that Schuster had not requested and Owners had not approved settlement with Dahmer for the State

---

[2] Schuster also made a claim under a "Tailored Protection" insurance policy (which the parties refer to as a "garage policy") issued by Auto-Owners Insurance Company, an affiliate of Owners. Auto-Owners Insurance Company denied a defense, indemnity, and coverage under the garage policy, which this Court confirmed in *Auto-Owners Insurance Company v. Cook*, 21-cv-348-JPG.

Farm policy limits.  They had clearly done so in the summer of 2020.

Schuster sent a letter dated February 16, 2021, accusing Owners of acting in bad faith and vexatiously refusing to honor the insurance contract.  He also suggested Owners "check [its] records regarding this file."  Def.'s Mot. Summ. J. Ex. H (Doc. 58-8 at 1).  Owners did not receive the letter until Schuster produced it in discovery in this litigation.

### 2.   Cook's Claim

Cook, Schuster's passenger at the time of the accident, also suffered injuries for which the State Farm policy limits would not provide adequate compensation, so he made a UIM claim against Owners under the Policy.  In a letter dated July 17, 2020, Cook demanded UIM arbitration of his claim.

Schuster's and Cook's UIM claims were in competition for the limited pool of UIM insurance—$300,000—available under the Policy for the one occurrence.  It was Owners' position that it was entitled to a set-off for the $100,000 State Farm paid to Schuster plus a set-off of the $100,000 it paid to Cook, leaving only $100,000 of the $300,000 UIM coverage limits to allocate between Schuster and Cook.  That available coverage was not enough to cover completely both claimants' injuries.  Schuster and Cook took the position that Owners was only entitled to one set-off of $100,000, so Owners owed each of them $100,000.

### C.   Litigation

Believing Owners had refused to arbitrate or pay the UIM claim in bad faith, Schuster filed this lawsuit in state court on March 10, 2021, and Owners removed it to this Court shortly thereafter.  Schuster amended its complaint to add an ICFA claim against Wilson (Doc. 17), but the Court found she was fraudulently joined and dismissed her from the suit (Doc. 28).  Schuster claims Owners manufactured excuses and refused to arbitrate the UIM coverage by:  (1) falsely representing it had not approved Schuster's settlement with State Farm, (2) taking the position that

5

Schuster was entitled to UIM coverage only with a set-off for Cook's settlement with Dahmer, and (3) withholding payment of the amount Owners conceded from the beginning it owed Schuster ($50,000, half of what it believed was left under the UIM coverage limits even with set-offs for the two settlements with Dahmer).

Faced with competing UIM claims from Schuster and Cook that it believed threatened to exceed the Policy limits and a dispute over the proper set-off amount, in December 2021, Owners filed an interpleader action seeking a declaration regarding the amount and allocation of the Policy limits and offering to deposit into Court the undisputed portion of the coverage—$100,000. *See Owners Ins. Co. v. Cook*, No. 21-cv-1657-JPG. Owners never tendered a deposit to the Court. Shortly after Cook withdrew his claim to UIM coverage in September 2022, Owners paid Schuster the $200,000 he sought, the UIM coverage limits with a single set-off for State Farm's payment to him. The Court then dismissed Case No. 21-cv-1657-JPG.

Schuster's claim under 215 ILCS § 5/155 for vexatiously and unreasonably *delaying* settlement of his UIM claim remains even though Owners eventually paid the claim in full. It is this vexatious delay claim that is the subject of Owners' pending summary judgment motion.

## III.    Discussion

### A.    Legal Standard

The Illinois Insurance Code provides a penalty against insurers whose acts or delay in settling claims are vexatious or unreasonable. 215 ILCS § 5/155(1). That statute states, in pertinent part:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts: [listing three alternative amounts].

"The statute provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996).  It was enacted to deter insurance companies from denying claims on flimsy pretexts, especially where the relative size of the claim and the costs of litigation make it impractical for an insured to recover in court, but it was not intended to punish insurers for asserting *bona fide* but inadequate defenses.  *Id.* (citing H. Havinghurst, *Some Aspects of the Illinois Insurance Code,* 32 Ill. L. Rev. 391, 405 (1937)); *see Sabrina Roppo v. Travelers Comm'l Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017).

For this reason, it is not enough just to show that an insurer denied a claim when it should not have.  On the contrary, to prevail under § 5/155(1), a plaintiff must show more than a *bona fide* dispute regarding coverage.  *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013).  It must show "that the insurer's behavior was willful and without reasonable cause." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). Conduct does not qualify if "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law."  *Citizens First Nat'l Bank*, 200 F.3d at 1110 (internal citations omitted); *accord Med. Protective Co. v. Kim*, 507 F.3d 1076, 1087 (7th Cir. 2007).

Whether conduct is vexatious and unreasonable calls for consideration of the totality of the circumstances and is a question for the Court, not a jury.  *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007); *Horning Wire Corp. v. Home Indem. Co.*, 8 F.3d 587, 590 (7th Cir. 1993).

B.    <u>Analysis</u>

The Court finds nothing in the record from which a reasonable fact-finder could conclude

Owners' delay in paying Schuster's UIM claim was vexatious or unreasonable.

To the extent Schuster's claim is based on Owners' failure to submit to arbitration on his request, that conduct was perfectly reasonable absent any obligation to arbitrate. The UIM policy only provided that a UIM claim "*may* be arbitrated provided *both* [Owners] and the injured person agree to arbitration." Policy, Underinsured Motorist Coverage, § 6b (emphasis added) (Doc. 61 at 9). There is no evidence Owners ever agreed to arbitrate with Schuster, so the Policy did not require it. Additionally, Illinois law created no obligation for an insurer to arbitrate *underinsured* motorist claims, although it does require it for *uninsured* motorist claims. *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011); *Worley v. Fender*, 79 N.E.3d 173, 182 (Ill. App. Ct. 2017); 215 ILCS § 5/143a(1). Without any obligation to arbitrate, Owners' refusal to do so was not unreasonable or vexatious.

To the extent Schuster's claim is based on Wilson's statement in her February 12, 2021, letter suggesting that Schuster had not sought permission from Owners to settle with Dahmer and State Farm, that erroneous statement was not the kind of vexatious or unreasonable conduct warranting an award under § 5/155. First, Wilson hedged her statement by saying she did "not believe" Schuster had requested authorization to settle. Then she invited Schuster to ask again once State Farm made an offer. This was not a hard "no," but just an, "I don't think so right now." It was incorrect, but it was not vexatious or unreasonable, and it indicated a mind open to further information. While failing to keep apprised of the status of an insured's file is not great business, it happens on occasion, and when it does rarely, it is not usually worthy of a penalty.

Schuster argues that the Court must assume on summary judgment that Wilson's February 12, 2021, statement was a willful misrepresentation and that she lied about failing to receive Schuster's February 16, 2021, letter. He argues this conduct justifies an award under § 5/155. However, even if she did commit willful misconduct, it had nothing to do with a delay in paying

8

Schuster's UIM claim.  Wilson's conduct occurred in February 2021, but Owners had delayed paying Schuster's claim since July 2020 because of legal uncertainty as to how to pay the competing UIM claims.  Once Cook dropped his claim for UIM benefits in the fall of 2022, that uncertainly disappeared, and Owners promptly paid the entire amount of UIM coverage to Schuster.  This would have happened regardless of Wilson's conduct; her misstatements and alleged duplicity simply had nothing to do with any delay in payment of Schuster's UIM claim.

To the extent Owners declined to pay Schuster the entire $200,000 he sought immediately when he asked for it, any delay was due to a good faith dispute about application of set-offs for settlement of competing claims to a limited coverage pool.  The dispute became apparent in July 2020, and was not resolved until late 2022, at which point Owners paid Schuster's claim in full. To the extent Schuster faults Owners for not paying at least some of his claim before then—the undisputed $50,000 he was due even under Owners' set-off legal theory—it is not unreasonable for an insurance company to delay payment until the full amount is determined to avoid having to claw back early payments ultimately shown to be in error.

## IV.    Conclusion

For these reasons, no reasonable fact-finder could conclude that Owners' delay in paying Schuster's UIM claim was vexatious or unreasonable and worthy of an award under § 5/155. Accordingly, the Court:

- **GRANTS** Owners' motion for summary judgment (Doc. 58); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  May 18, 2023**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

9